**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 9, 2023

_González C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 9, 2023

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) ) ) | No. 101068-1 |
| AMANDA CHRISTINE KNIGHT, | ) ) | En Banc |
| Petitioner. | ) ) ) | Filed: <u>November 9, 2023</u> |

PENNELL, J.[*] — This case marks the second time our court has considered

a petition for relief from personal restraint by Amanda Knight. In the prior case, the

court rejected Ms. Knight's claim that her separate convictions for felony murder

(based on the felony of first degree robbery) and first degree robbery violated the

constitutional protection against double jeopardy.[1] Although the prohibition of double

jeopardy generally precludes the State from imposing separate convictions for felony

murder and its predicate offense, the court's prior case held this prohibition did not

apply because Ms. Knight's felony murder and robbery convictions were premised

on different conduct. Specifically, the felony murder was based on robbery of a safe,

---

[*] Judge Rebecca L. Pennell is serving as a justice pro tempore of the Supreme Court pursuant to article IV, section 2(a), of the Washington Constitution.

[1] _See_ U.S. CONST. amends. V, XIV; WASH. CONST. art. I, § 9.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Knight*
No. 101068-1

whereas the first degree robbery was based on robbery of a ring. Ms. Knight moved for reconsideration of our prior decision, arguing that this court had misconstrued the basis for the felony murder conviction. Reconsideration was denied.

Ms. Knight's current petition argues that given the court's previous holding, her conviction for felony murder must be reversed because the jury was presented with insufficient evidence that there had been a robbery of the safe, as that charge was defined by the trial court's jury instructions. This issue was not anticipated by the prior decision. Nevertheless, it has merit. We agree with Ms. Knight that there was insufficient evidence at trial to justify a conviction for robbery of the safe. Thus, the basis for the felony murder conviction cannot be sustained. We therefore grant Ms. Knight's petition for relief, vacate the felony murder conviction, and remand for resentencing.

FACTS AND PROCEDURE

Amanda Knight is serving 860 months in prison based on convictions for first degree felony murder, first degree robbery, and other offenses. The facts underlying Ms. Knight's case have been addressed in detail in prior appellate decisions. *See In re Pers. Restraint of Knight*, 196 Wn.2d 330, 333-35, 473 P.3d 663 (2020); *State v. Knight*, 176 Wn. App. 936, 941-47, 309 P.3d 776 (2013). We therefore provide only a brief summary.

*In re Pers. Restraint of Knight*
No. 101068-1

In April 2010, Ms. Knight and three male accomplices engaged in a home invasion robbery. Ms. Knight and one of her accomplices gained entrance to the home of James and Charlene Sanders under the pretext of buying a ring listed for sale on Craigslist. While discussing the ring, Ms. Knight's accomplice pulled out a handgun and brandished it at the Sanderses. Ms. Knight and her accomplice then restrained the Sanderses with zip ties, removed both their rings, and ordered them to lie face down on the floor. The remaining two accomplices then entered the residence after Ms. Knight issued a signal via a Bluetooth device. *See Knight*, 176 Wn. App. at 941-42.

Once all accomplices were inside, the Sanderses' two minor children were brought at gunpoint into the same room as their parents. The children were restrained with zip ties and one was pistol-whipped in the head. Not long after, Ms. Knight went upstairs to look for other items of value. *See Knight*, 196 Wn.2d at 334.

While Ms. Knight was upstairs, one of the male invaders held a gun to Charlene Sanders's head. He pulled back the hammer, began counting down, and asked about a safe. Ms. Sanders initially denied having a safe. The man kicked Ms. Sanders in the head, called her a profanity, and threatened to kill her and her children. Eventually, Ms. Sanders admitted there was a safe in the garage. *See Knight*, 176 Wn. App. at 943.

James Sanders agreed to provide a combination to the safe and his zip ties were loosened. Mr. Sanders then broke free of the restraints and attacked one of the men. *See Knight*, 196 Wn.2d at 334. Mr. Sanders was shot in the ear, rendering him unconscious. The men then dragged Mr. Sanders into another room, where he was fatally shot. *See Knight*, 176 Wn. App. at 943.

Ms. Knight and her accomplices fled the residence, taking the rings and other items. *See id.* at 943-44. The safe was neither breached nor removed from the residence.

Ms. Knight subsequently turned herself in to authorities and was charged with felony murder, based on first degree robbery; two counts of first degree robbery, one for robbing James Sanders and one for robbing Charlene Sanders; two counts of second degree assault, one for assaulting Charlene Sanders and one for assaulting her child; and first degree burglary. Each charge alleged accomplice liability, firearm enhancements, and aggravating factors. Ms. Knight exercised her right to trial. *See id.* at 944-45.

After the close of trial in April 2011, the jury was instructed that Ms. Knight's felony murder charge was based on the allegation that she or an accomplice had committed first degree robbery. The jury instructions did not clarify which conduct formed the basis of the underlying robbery. The instructions specified the State was required to prove a completed robbery in order to secure a conviction for felony

4

*In re Pers. Restraint of Knight*
No. 101068-1

murder. *See* Pers. Restraint Pet., No. 99755-1 (Wash. May 10, 2021) (PRP), App. F

(jury instruction 9).[2] The jury returned guilty verdicts on all counts.

Ms. Knight appealed her convictions, arguing that her robbery and assault

convictions against Charlene Sanders merged and that her separate convictions and

punishments violated double jeopardy. The Court of Appeals disagreed and affirmed.

*See Knight*, 176 Wn. App. at 940-41.

In 2016, Ms. Knight filed her first personal restraint petition, raising a new

claim that her convictions for the robbery and felony murder of James Sanders

merged. The Court of Appeals initially denied her petition, but then granted partial

relief on reconsideration. *See In re Pers. Restraint of Knight*, No. 49337-3-II,

slip op. at 2 (Wash. Ct. App. Mar. 14, 2019) (unpublished), https://www.courts.wa.

gov/opinions/pdf/D2%2049337-3-II%20Unpublished%20Opinion.pdf. Both the State

and Ms. Knight moved for discretionary review, which we granted.[3]

---

[2] The to-convict instruction on felony murder specified the State was required to prove that Ms. Knight "or an accomplice *committed* Robbery in the First Degree." PRP, App. F (jury instruction 9) (emphasis added). Had attempted robbery been contemplated as the basis for the felony murder charge, the instructions would have needed to require the State to prove that Ms. Knight or an accomplice "[committed] [*or*] [*attempted to commit*] [Robbery in the First Degree]." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 26.04, at 366 (3d ed. 2008) (emphasis added) (most alterations in original). The parties do not dispute that the instructions, as written, required proof of a completed robbery.

[3] In her motion for discretionary review, Ms. Knight asserted that her convictions for assault and robbery of Charlene Sanders merged. The Court of Appeals had declined review of this issue as it had already been addressed on direct review, and we affirmed that portion of the Court of Appeals decision. *See Knight*, 196 Wn.2d at 333, 335, 341.

*In re Pers. Restraint of Knight*
No. 101068-1

In a 5-4 decision, this court reversed the Court of Appeals in part and affirmed

Ms. Knight's original conviction and sentence, effectively dismissing her petition. *See*

*Knight*, 196 Wn.2d at 342. This court began its double jeopardy analysis by reviewing

the applicable legal framework. The court recognized that the fundamental question

regarding whether multiple convictions and punishments violate double jeopardy

turns on legislative intent.[4] *See id.* at 336. But because the legislature rarely declares

its intent on this issue, courts have developed a series of interpretive tests.

The first is the *Blockburger*[5] same elements test. This asks whether each of the

offenses required proof of a fact that the other did not. *See Knight*, 196 Wn.2d at 337

(quoting *State v. Freeman*, 153 Wn.2d 765, 772, 108 P.3d 753 (2005)). We also

consider the merger doctrine, which analyzes whether two offenses should be treated

as one because the degree of a greater offense is elevated by a separately criminalized

lesser offense. *See id.* (quoting *Freeman*, 153 Wn.2d at 772-73). Finally, there is the

independent purpose or effect test. This test operates as an exception to the merger

doctrine and involves an analysis of whether each of a defendant's underlying crimes

---

[4] When multiple convictions fall under the same criminal statute, double jeopardy turns on the unit of prosecution test. *See, e.g.*, *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980-81, 329 P.3d 78 (2014).

[5] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

6

*In re Pers. Restraint of Knight*
No. 101068-1

involve a separate and distinct injury.[6] *See id.* at 337-38 (quoting *Freeman*,

153 Wn.2d at 773; *State v. Arndt*, 194 Wn.2d 784, 819, 453 P.3d 696 (2019)).

The court's prior decision stated, "[N]either the statute for felony murder

nor the statute for first degree robbery explicitly authorizes these crimes to be

punished separately from any related crime." *Id.* at 336 (citing RCW 9A.32.030;

RCW 9A.56.190, .200). "Furthermore, these statutes' legislative history do not reflect

that the legislature intended to punish these offenses separately . . . ." *Id.* Thus, the

prior decision deemed "legislative intent unclear." *Id.* However, the court observed

that "[i]f our analysis stopped" at either the *Blockburger* test or the merger doctrine,

Ms. Knight's separate convictions for felony murder and robbery "would violate

double jeopardy." *Id*. at 337. The court then focused its attention on the independent

purpose or effect exception to merger.

The court applied the independent purpose or effect test to the robbery and

murder of James Sanders and concluded the two offenses did not involve the "same

conduct." *Id*. at 338. According to the court, Ms. Knight "had already completed the

first robbery before the second robbery began that led to her felony murder charge."

---

[6] Though not addressed in the prior decision, we note under the supremacy clauses of the state and federal constitutions, our double jeopardy jurisprudence cannot be less protective than the standard set by the United States Supreme Court. *See* WASH. CONST. art. I, § 2; U.S. CONST. art. VI, cl. 2; *see also State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995) (holding that Washington's double jeopardy clause must be "given the same interpretation the [United States] Supreme Court gives to the Fifth Amendment [to the United States Constitution]").

*In re Pers. Restraint of Knight*
No. 101068-1

*Id*. The court explained the first robbery occurred when Ms. Knight "and her accomplice took [James Sanders's] ring off his finger; once [Mr. Sanders] was held at gunpoint and had his ring removed, the robbery was complete." *Id*. The robbery of the safe was described as "a separate robbery" from the robbery of the ring. *Id*. at 339. It was this "new robbery," characterized as "a second, distinct robbery," that formed the basis of the felony murder conviction. *Id*. Given the distinction between the first robbery of the rings and the second purported robbery of the safe, a majority of this court held Ms. Knight's "convictions against James Sanders had 'independent effects' from each other" and therefore did not violate double jeopardy. *Id*.

The prior decision rejected Ms. Knight's concern that the jury was never advised about which robbery formed the basis of the felony murder charge. Although the jury instructions did not clarify which robbery was connected to the felony murder charge, the majority noted the prosecution "made this election during closing argument." *Id*. at 340. The way in which the State argued the case "clearly show[ed] that the robbery of the ring was complete" before Ms. Knight's accomplices "engaged in another robbery of the Sanderses' safe and the subsequent murder of James Sanders." *Id*.

Four justices dissented from the majority opinion. Among other things, the dissent argued the majority had misinterpreted the State's closing argument. Contrary to the majority's analysis, the dissent opined the State had not made a clear election

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Knight*
No. 101068-1

about which conduct formed the bases of the felony murder and robbery counts. *Id.* at 346 (Yu, J., dissenting). Absent a clear election, the dissent asserted, the jury's verdicts must be interpreted in Ms. Knight's favor under the rule of lenity. *See id.* (citing *State v. Kier*, 164 Wn.2d 798, 811-14, 194 P.3d 212 (2008); *State v. Whittaker*, 192 Wn. App. 395, 416-17, 367 P.3d 1092 (2016)). The majority rejected this analysis and affirmed. *See id.* at 340-41.

Ms. Knight moved for reconsideration. The crux of the reconsideration motion echoed the dissent's concern that the court had misconstrued the State's closing argument. According to Ms. Knight, the State never made a clear election as to a distinct robbery forming the basis of the felony murder charge. Instead, the prosecutor's position was simply that the charges of felony murder and first degree robbery of James Sanders were based on the same acts. *See* Pet'r's Mot. for Recons., *In re Pers. Restraint of Knight*, No. 97066-1, at 2-6 (Wash. Oct. 28, 2020).

Reconsideration was denied over a four-justice dissent. The dissent agreed with Ms. Knight that the majority had misapprehended the State's closing argument. According to the dissent, the State never argued there had been "two different crimes based on two different robberies." Ord. Den. Mot. for Recons., *In re Pers. Restraint of Knight*, No. 97066-1, at 1 (Wash. Feb. 2, 2021) (Gordon McCloud, J., dissenting). Instead, the State's theory of the case was that the robbery underlying Ms. Knight's felony murder conviction was the robbery of the ring.

*In re Pers. Restraint of Knight*
No. 101068-1

Again, a majority of the court was unpersuaded and denied reconsideration.

The opinion became final on February 2, 2021, the date reconsideration was denied.

Several months later, Ms. Knight filed a personal restraint petition directly

in this court, arguing the evidence was not sufficient to support felony murder based

on robbery of the safe. *See* PRP. This court transferred the petition to the Court of

Appeals for consideration under RAP 16.5(c). In an unpublished decision that did

not terminate review, the Court of Appeals held Ms. Knight's petition was successive,

but not untimely based on RCW 10.73.100(4) (insufficient evidence exception).

Accordingly, the petition was transferred to this court, citing RCW 10.73.140.

*See In re Pers. Restraint of Knight*, No. 56100-0-II, slip op. at 5 (Wash. Ct. App.

July 6, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%

2056100-0-II%20Unpublished%20Opinion.pdf. This court subsequently granted

review and ordered the petition be set for consideration on the merits.

## ANALYSIS

Ms. Knight filed this personal restraint petition just over seven years after her

judgment became final in 2014. Typically, petitions are subject to a one-year statutory

time bar. *See* RCW 10.73.090(1). But the law allows some limited exceptions. Ms.

Knight asserts her petition falls under an exception because her conviction was not

supported by sufficient evidence. This type of claim is exempt from the one-year bar.

10

*In re Pers. Restraint of Knight*
No. 101068-1

RCW 10.73.100(4). Accordingly, the question of whether Ms. Knight's petition is timely turns on the substance of her insufficiency claim.[7]

When presented with a sufficiency challenge, we construe the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found each and every element of the crime charged beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). All reasonable inferences are drawn in the State's favor and the evidence is interpreted against the defense. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). This is a deferential standard, but it is not a rubber stamp. If there is a failure of proof as to an essential element of a charged offense, the defendant's conviction must be reversed with prejudice. *State v. Smith*, 155 Wn.2d 496, 505, 120 P.3d 559 (2005).

As the jury was instructed, the charge of felony murder required the State to prove the following elements:

> (1) That on or about April 28, 2010, [Amanda Knight] or an accomplice *committed* Robbery in the First Degree;
> (2) That [Amanda Knight] or an accomplice caused the death of James Sanders, Sr[.], in the course of or *in furtherance of such crime*;
> (3) That James Sanders, Sr. was not a participant in the crime of Robbery in the First Degree; and
> (4) That any of these acts occurred in the State of Washington.

---

[7] The Court of Appeals declined review of Ms. Knight's personal restraint petition, reasoning it was successive. Under RCW 10.73.140, the Court of Appeals generally cannot consider successive petitions. But this restriction does not apply to the Supreme Court. Thus, the Court of Appeals may transfer a successive petition to the Supreme Court if the petition is not otherwise time barred. *See In re Pers. Restraint of Bell*, 187 Wn.2d 558, 562, 387 P.3d 719 (2017) (per curiam).

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

PRP, App. F (jury instruction 9) (emphasis added).

Felony murder need not be based on a completed crime. RCW 9A.32.030(1)(c). But if it is predicated on an attempted crime, the jury instructions must so state. *See State v. Stewart*, 35 Wn. App. 552, 555, 667 P.2d 1139 (1983). Here, the instructions referenced only a completed crime. The State did not object to the instructions at the time of trial; in fact, the State proposed the felony murder instruction that was ultimately adopted by the trial court. PRP, App. G (State's proposed jury instruction 10). It therefore became the law of the case that the State was required to prove Mr. Sanders's murder was caused in the course of or in furtherance of the completed crime of first degree robbery. *See State v. Johnson*, 188 Wn.2d 742, 755, 399 P.3d 507 (2017); *State v. Hickman*, 135 Wn.2d 97, 101-02, 954 P.2d 900 (1998).

The decision governing Ms. Knight's prior petition held the robbery that provided the basis for the felony murder charge was the robbery of the safe. *See Knight*, 196 Wn.2d at 339 (concluding that Mr. Sanders was fatally shot "in furtherance of [Ms.] Knight's accomplices robbing the Sanderses *of their safe*" (emphasis added)). Yet the evidence at trial showed nothing more than an attempted robbery of the safe. The safe was never breached. Nor was it removed from the Sanders residence. Insufficient evidence supports a jury verdict for felony murder predicated on robbery of the safe.

*In re Pers. Restraint of Knight*
No. 101068-1

To save Ms. Knight's conviction from a sufficiency challenge, the State attempts to recharacterize the felony murder conviction in ways that diverge from its prior characterizations of the basis for the felony murder conviction and that diverge from our prior decision. In its most recent briefing to this court, the State argued that the "second" robbery that formed the basis of the felony murder conviction was the robbery of items taken from the upstairs of the residence.[8] At oral argument, the State changed course and claimed there were never actually two distinct robberies. While not suggesting the felony murder conviction was predicated simply on the robbery of the rings, the State argued "the homicide of Mr. Sanders occurred during the course of and in furtherance of an armed home invasion robbery." Wash. Sup. Ct. oral argument, *In re Pers. Restraint of Knight*, No. 101068-1 (Feb. 28, 2023), at 15 min., 56 sec. through 16 min., 6 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. According to the State, this home invasion "robbery began when the gun was pointed at Mr. and Mrs. Sanders" and did not end until Ms. Knight and her accomplices "le[ft] the house and . . . fle[d]." *Id.* at 27 min., 44 sec. through 27 min., 53 sec.; 26 min., 20 sec. through 26 min., 28 sec.

---

[8] Adhering at least to the framework of the court's prior decision, the State's supplemental brief repeatedly argues Mr. Sanders was shot in the course of a "second" robbery. Suppl. Br. of Resp't at 24, 25. The State's briefing recognized that under the terms of the prior decision, it needed to show "that Mr. Sanders was murdered in the course of or in furtherance of a completed robbery—one that [Ms.] Knight was a party to and that was *distinct from the robbery of the rings*." *Id.* at 14 (emphasis added).

13

*In re Pers. Restraint of Knight*
No. 101068-1

The dissent also recasts the prior decision, albeit under a different methodology. Unlike the State, the dissent does not claim that the felony murder was based on the robbery of items taken from the upstairs of the residence or that it was based on an ongoing home invasion robbery. Instead, tie dissent claims the "felony murder conviction was based on the robbery of James Sanders's wedding ring." Dissent at 1.

Neither attempt to salvage Ms. Knight's felony murder conviction is faithful to the text of the prior decision. The prior decision could not have been clearer that there were two distinct robberies and that the second robbery—the one that formed the basis of the felony murder conviction—was the robbery of the safe.

The prior decision did not simply make clumsy use of the word "complete." *Cf. id.* at 6 n.1. The prior decision repeatedly, emphatically, and through the use of different synonyms insisted that the murder of Mr. Sanders occurred "in furtherance of"[9] a different robbery than the robbery of the rings that formed the basis of Ms. Knight's robbery conviction. *Knight*, 196 Wn.2d at 339, 342; *see id.* at 338 ("[Ms.] Knight had already *completed* the first robbery before the *second robbery* began that *led to her felony murder charge*." (emphasis added)), 338-39 ("Subsequently, [Mr. Sanders] was pulled up from the floor and had his zip tie loosened in order to guide

---

[9] It bears emphasis that in the felony murder context, the phrase "in furtherance of" is a term of art with specific statutory meaning. As set forth in RCW 9A.32.030(1)(c), the phrase designates the felony that forms the basis of the felony murder conviction.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

[Ms.] Knight's accomplices to the safe—a *separate robbery*." (emphasis added)), 339 ("In the middle of this *new robbery*, [Mr. Sanders] attacked [Ms.] Knight's accomplices, who then killed [Mr. Sanders]—completing [Ms.] Knight's felony murder charge, as [Mr. Sanders's] murder was in furtherance of a *second, distinct robbery*." (emphasis added)).

Furthermore, the prior decision specifically held that the separate robbery was of the safe, not robbery of some other pieces of property. *See id*. at 338-39 ("Subsequently, [Mr. Sanders] was pulled up from the floor and had his zip tie loosened in order to guide [Ms.] Knight's accomplices to the *safe*—a separate robbery." (emphasis added)), 339-40 ("We conclude that even though both the ring and the *safe* were owned by [Mr. Sanders], the circumstances in which these items were stolen were completely distinct from each other as to constitute two 'separate forcible taking[s] of property,' thus the first robbery of [Mr. Sanders] was completed once his ring was taken off his finger at gunpoint." (emphasis added) (second alteration in original)), 340 ("[T]he robbery of the ring was complete before [Ms.] Knight's accomplices engaged in *another* robbery of the Sanderses' *safe* and the subsequent murder of James Sanders." (emphasis added)).

Apart from this express language in its characterization of the facts, the legal reasoning employed in the prior decision emphasized that the court was addressing separate robbery offenses, not merely separate effects. As previously noted, the prior

*In re Pers. Restraint of Knight*
No. 101068-1

decision explained that the existence of two separate robberies was consistent with

the jury instructions because the State elected to prove two robberies during closing

argument to the jury: one robbery as the basis for the felony murder charge and one

as a standalone crime. *Id.* at 340.[10] The decision also utilized the concept of "unit[s]

of prosecution" in reasoning that there were two separate chargeable robberies. *Id.*

at 339.[11] Neither of these discussions would have been apt—indeed they would have

been contradictory—had the prior decision intended to convey the idea that the jury

was asked to find only one overarching robbery.

As previously noted, the prior decision's insistence that there were two distinct

robberies prompted strong dissents. The dissents argued the record did not support

finding more than one robbery of James Sanders so as to justify separate punishments

---

[10] The prior decision's discussion of the prosecutor's election was based on *State v. Coleman*, 159 Wn.2d 509, 150 P.3d 1126 (2007), and *State v. Carson*, 184 Wn.2d 207, 357 P.3d 1064 (2015). *See Knight*, 196 Wn.2d at 340. *Coleman* and *Carson* are not double jeopardy cases. They do not address concepts of merger or independent effects. Instead, the cases dealt with the unanimity problem that can arise when jurors are presented with multiple acts, any number of which might form the basis of a criminal charge. In such circumstances, unanimity must be ensured by either an instruction or the prosecutor's election of "which . . . act[ ] is *relied upon for a conviction*." *Coleman*, 159 Wn.2d at 511 (emphasis added). A prosecutor does not elect independent purposes or effects when presenting a case to a jury.

[11] The unit of prosecution analysis is used to determine whether a defendant may be properly charged with and convicted of multiple violations of the same statute. *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2005). When it comes to robbery, the unit of prosecution "is each separate forcible taking of property from or from the presence of a person having an ownership, representative, or possessory interest in the property, against that person's will." *Id*. at 714-15. The prior opinion held that the robbery of the ring and the robbery of the safe were "two 'separate forcible taking[s] of property.' " *Knight*, 196 Wn.2d at 339-40 (alteration in original). In other words, the decision held the conduct encompassed two separate units, meaning two separate criminal acts.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

for robbery and felony murder. *See id*. at 346 (Yu, J., dissenting) (emphasizing that the instructions at trial did not specify that the robbery forming the basis of felony murder was "of the safe, as opposed to the robbery of the ring"); Ord. Den. Mot. For Recons., *In re Pers. Restraint of Knight*, No. 97066-1, at 1 (Wash. Feb. 2, 2021) (Gordon McCloud, J., dissenting) (pointing out the "majority opinion misapprehended" the facts in concluding there were "two different crimes based on two different robberies"). Yet the prior decision stood firm, without qualification: Mr. Sanders was killed "in furtherance of" a robbery of the safe, not his ring. *Knight*, 196 Wn.2d at 339. At this point the decision is final and cannot be revised, regardless of any misgivings.

Had the prior decision decided that there was only one robbery—either a single ongoing robbery of the home or a robbery of the rings—the court's analysis and outcome would have been different. Our case law holds that double jeopardy prohibits punishing felony murder separately from the underlying felony on which the murder charge is based. *See State v. Muhammad*, 194 Wn.2d 577, 619, 451 P.3d 1060 (2019) (plurality opinion) (opinion of Gordon McCloud, J.) (noting that "felony murder and the felony on which it is based . . . must merge"); *see also id.* at 637 (Madsen, J., concurring/dissenting) (concluding that felony murder premised on rape, and the rape

17

*In re Pers. Restraint of Knight*
No. 101068-1

itself, "constitute[d] one crime");[12] *Whalen v. United States*, 445 U.S. 684, 693-94, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). Separate convictions and punishments are available only if the felony murder is based on a felony that is different from other felonies found by the jury. *See Muhammad*, 194 Wn.2d at 626 (opinion of Gordon McCloud, J.). Thus, the only way the court could justify separate convictions and punishments for Ms. Knight's felony murder and robbery convictions was by concluding the two crimes were based on separate conduct.

Moreover, contrary to the State's invitation to find that the felony murder robbery was, in hindsight, based on items taken from the upstairs of the Sanderses' home, we are not simply free to sift through the record to find a separate basis for the felony murder conviction other than the robbery of the safe. It is the jury's job to find facts, not this court's. *Stiley v. Block*, 130 Wn.2d 486, 502, 925 P.2d 194 (1996).

---

[12] Justice Gordon McCloud's opinion in *Muhammad* bore three justices' signatures. However, the partial concurrence authored by Justice Madsen and signed by Justice Johnson stated that it "concur[red] with . . . Justice Gordon McCloud's opinion on the issue of double jeopardy." 194 Wn.2d at 633; *see also id.* at 637 (stating simply, "Turning to double jeopardy, I agree with Justice Gordon McCloud"). Nor did Justice Madsen's partial concurrence elaborate in a way that indicated any disagreement with Justice Gordon McCloud's analysis. Although the predicate crime in *Muhammad* was first degree rape, not first degree robbery, that superficial distinction is of no consequence to the point of law for which we cite *Muhammad*. Felony murder necessarily incorporates all elements of its predicate felony, regardless of the specific predicate felony. Just as "felony murder [premised on first degree rape] encompasses all of the elements of first degree rape," *see id.* (Madsen, J., concurring/dissenting), felony murder premised on first degree robbery encompasses all of the elements of first degree robbery. *See id.* ("Murder is not felony murder without the underlying felony."); *accord id.* at 624 (opinion of Gordon McCloud, J.) (noting felony murder's "unique dependence on its predicate offense"). In sum, we cite *Muhammad* for legal analysis that five justices in that case agreed to.

18

*In re Pers. Restraint of Knight*
No. 101068-1

Where, as here, the defendant's conviction and punishment required a finding of distinct criminal conduct, we cannot go beyond what was established by the jury's verdict. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *see also Ring v. Arizona*, 536 U.S. 584, 602, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt."). This court's prior decision comported with this constitutional demand by deciding the jury must have found, pursuant to the prosecutor's election, that the felony murder was based on robbery of the safe and therefore based on conduct separate from the first degree robbery, which was based on robbery of the rings.

We note it is nothing new to say that application of the independent purpose and effects test must comport with the constitutional right to have a jury decide all facts necessary for punishment. A foundational case in this context is *State v. Freeman*, where the issue was whether and when a defendant may be punished for both a robbery elevated to first degree by an assault and the assault itself. 153 Wn.2d at 771. In discussing the independent purposes and effects test, the *Freeman* court reasoned this exception to the merger doctrine "would not apply" based on facts "not found by the jury." *Id*. at 779. Judicial speculation that a crime may have had an independent purpose or effect is not sufficient. *See id*. *Freeman* stands for the rule

19

*In re Pers. Restraint of Knight*
No. 101068-1

that "the double jeopardy inquiry is into the offenses as charged *and proved*." *In re*

*Pers. Restraint of Francis*, 170 Wn.2d 517, 535, 242 P.3d 866 (2010) (Madsen, C.J.,

concurring).[13]

Other cases are in accord. Apart from our resolution of Ms. Knight's first

petition, the only two cases from this court where the independent purposes or effects

test was employed to justify separate punishments after a jury trial are *Arndt* and *State*

*v. Vladovic*, 99 Wn.2d 413, 662 P.2d 853 (1983).[14] In both cases, the court approved

separate punishment because the defendant's different crimes of conviction involved

proof to the jury of separate victims. *See Arndt*, 194 Wn.2d at 819 (separate victims

for first degree murder and arson); *Vladovic*, 99 Wn.2d at 421-22 (separate victims for

attempted robbery and kidnapping). Neither case authorized judges to search the

record for an independent purpose or effect beyond what was established by the jury

verdicts.

---

[13] Contrary to the dissent's characterization, *Freeman* does not conflict with *Muhammad*. *See* dissent at 16 n.6. *Freeman* did not involve felony murder or the unique statutory language contained in the felony murder statute. As contemplated in *Freeman*, an assault and a robbery elevated to first degree by the assault might be separately punished if the assault was for some purpose besides "to facilitate the robbery." 153 Wn.2d at 779. But when it comes to felony murder, the sole purpose of the offense is to facilitate the underlying predicate felony. "The exception to the merger rule and felony murder are irreconcilable and cannot coexist." *Muhammad*, 194 Wn.2d at 626 (opinion of Gordon McCloud, J.).

[14] The only other case from this court to justify separate punishments by virtue of independent purposes and effects is *In re Personal Restraint of Fletcher*, 113 Wn.2d 42, 776 P.2d 114 (1989). *Fletcher* involved a guilty plea. It is an early case that did not clearly distinguish the independent purposes and effects test from the *Blockburger* test.

20

*In re Pers. Restraint of Knight*
No. 101068-1

Because Ms. Knight's murder and robbery convictions were based on distinct conduct, the separate convictions and punishments did not run afoul of the protection against double jeopardy. *See Knight*, 196 Wn.2d at 342.[15] But as Ms. Knight points out in her current petition, the specific conduct that the State elected as the basis for the felony murder conviction was not actually sufficient to prove the elements of felony murder as that charge was presented to the jury. This leaves us in the unusual circumstance where the State's victory in the prior decision (allowing separate punishments for robbery and felony murder) mandates its defeat here. In theory, Ms. Knight could have been subject to separate punishments for robbery based on the theft of the ring and felony murder based on an attempted robbery of the safe. But as submitted to the jury, the conviction for felony murder cannot be sustained.

Ms. Knight has demonstrated she is under restraint for a conviction that is not supported by sufficient evidence. Thus, her petition for relief is subject to an

---

[15] As the dissent points out, the justices who dissented from the prior decision took the view that based on the jury instructions, the verdict could not be interpreted as finding Ms. Knight guilty of felony murder based on a robbery of the safe, "as opposed to the robbery of the ring," *Knight*, 196 Wn.2d at 346 (Yu, J., dissenting), and therefore double jeopardy precluded multiple punishments. Dissent at 3. But this position did not prevail. As already explained, the *Knight* majority repeatedly insisted that multiple punishments were permissible because Mr. Sanders was murdered "in furtherance of Knight's accomplices robbing the Sanderses *of their safe*." 196 Wn.2d at 339 (emphasis added); *see id.* at 338-40. It is not a re-write to make this point. Nor is it improper for the justices previously in dissent to now adhere to the majority's prior characterization of the record. Far from overruling the prior decision or threatening the integrity of the court, adhering to the text of a prior opinion, despite previous disagreements, fosters respect for the rule of law and public confidence in the judiciary. *See State v. Barber*, 170 Wn.2d 854, 863, 248 P.3d 494 (2011) (observing that standing by past opinions promotes the courts' actual and perceived integrity).

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

exception to the one-year time bar. We grant Ms. Knight's petition and remand this

case with instructions to vacate the conviction for felony murder and for resentencing.

_____, J.P.T.
Pennell, J.P.T.

WE CONCUR:

_____

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Knight,* No. 101068-1 (González, C.J., concurring in part; dissenting in part)

No. 101068-1

GONZÁLEZ, C.J. (concurring in part; dissenting in part) — Amanda Christine Knight and her accomplices entered James and Charlene Sanders' home under false pretenses; terrorized the Sanderses and their children; and assaulted, robbed, and brutally murdered James Sanders. *State v. Knight*, 176 Wn. App. 936, 941-44, 309 P.3d 776 (2013). They also assaulted and robbed Charlene Sanders, and stole rings off of James' and Charlene's fingers. *Id.* at 940, 942. A jury heard the evidence and found Knight guilty. *Id.* at 940. This is not under debate today.

To convict Knight of felony murder, the jury had to find that she or her accomplices killed James Sanders in the course or furtherance of robbing him. Clerk's Papers (Wash. No. 97066-1 (2020)) (CP) at 336 (jury instruction 9). To convict Knight of robbing James Sanders, the jury had to find that she or her accomplices unlawfully took personal property from him. CP at 340 (jury instruction 13). Nothing in either to-convict jury instruction required the jury to determine *what* property had been taken.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Knight,* No. 101068-1 (González, C.J., concurring in part; dissenting in part)

Both our state and federal constitutions explicitly forbid double jeopardy. WASH. CONST. art. I, § 9; U.S. CONST. amend. V. That means, among other things, that a person cannot be punished twice for the same offense. *State v. Contreras*, 124 Wn.2d 741, 745, 880 P.2d 1000 (1994). Where, as here, a person is being punished multiple times for crimes arising out of the same event, double jeopardy rears its head. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Under *Blockburger,* "where," as here, "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*

As this court properly recognized three years ago, under the double jeopardy test set forth by the United States Supreme Court in *Blockburger*, absent an exception, both convictions could not stand. *In re Pers. Restraint of Knight*, 196 Wn.2d 330, 337, 473 P.3d 663 (2020) (citing *Blockburger*, 284 U.S. 299). Every element of robbing James Sanders was also an element of murdering him. *Compare* CP at 366, *with* CP at 340. Absent clear legislative intent to punish both crimes separately or some other exception, it violates double jeopardy to punish Knight for both crimes. *See Blockburger*, 284 U.S. at 304; *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005).

*In re Pers. Restraint of Knight,* No. 101068-1 (González, C.J., concurring in part; dissenting in part)

A majority of the court concluded that such an exception applied to the crimes against James Sanders. The majority concluded that the robbery and murder had a separate purpose or effect from the other. *Knight*, 196 Wn.2d at 337-38 (quoting *Freeman*, 153 Wn.2d at 773).

In *Knight*, the court concluded that the murder and the robbery had separate effects based on a strained review of the record. While the State presented evidence that Knight and her accomplices stole considerable property from the Sanders family and attempted to steal more, the court concluded that the robbery conviction was predicated on taking James Sanders' ring from his finger. *Knight*, 196 Wn.2d at 338 ("Knight committed the robbery she was charged with when she and her accomplice took James' ring off his finger; once James was held at gunpoint and had his ring removed, the robbery was complete.") The murder, the court concluded, was in furtherance of a different, uncharged attempted robbery— an attempted robbery of a safe the Sanderses kept in the garage. *Id.* at 339 ("James' 'person or property' was injured 'in a separate and distinct manner' when he was robbed of his ring, and then injured 'in a separate and distinct manner' when he was shot in furtherance of Knight's accomplices robbing the Sanderses of

3

*In re Pers. Restraint of Knight,* No. 101068-1 (González, C.J., concurring in part; dissenting in part)

their safe." (internal quotation marks omitted) (quoting *State v. Arndt*, 194 Wn.2d

784, 819, 453 P.3d 696 (2019))).[1]

But nothing in the jury instructions suggest that the felony murder count was

based on a separate, uncharged, attempted robbery of the safe.  Nor could a jury

that was faithfully following the jury instructions have returned a felony murder

guilty verdict based on the attempted robbery of the safe.  As instructed, the jury

had to find that James Sanders' murder occurred in the course or furtherance of a

*completed* robbery, not an attempted one.  CP at 336.

Furthermore, even if Knight and her accomplices had completed a robbery

of the safe before fleeing the Sanderses' home, a separate robbery charge would

not have been supported. "[M]ultiple counts [of robbery] may not be based on

multiple items of property taken from the same person at the same time." *State v.*

---

[1] I respectfully disagree with the dissent that "*all* of the justices in *Knight* agreed, the predicate for Sanders's murder is the robbery of the rings." Dissent at 2.  In fact, the majority in *Knight* found that the murder was not predicated on the robbery of the rings, but on a separate (attempted) robbery of the safe, explaining:

> Knight committed the robbery she was charged with when she and her accomplice took James' ring off his finger; once James was held at gunpoint and had his ring removed, the robbery was complete.
>
> Subsequently, James was pulled up from the floor and had his zip tie loosened in order to guide Knight's accomplices to the safe—a separate robbery. In the middle of this new robbery, James attacked Knight's accomplices, who then killed James—completing Knight's felony murder charge, as James' murder was in furtherance of a second, distinct robbery.

*Knight*, 196 Wn.2d at 338-39.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Knight,* No. 101068-1 (González, C.J., concurring in part; dissenting in part)

*Tvedt*, 153 Wn.2d 705, 720, 107 P.3d 728 (2005). Nothing in the record or in *Knight* establishes that a robbery of the safe would have been a separate robbery or that an attempted robbery charge based on things the defendants tried and failed to steal would have been appropriate.

Accordingly, I concur with the lead opinion to this extent—if *Knight* was correctly decided, insufficient evidence supports the felony murder conviction. The to-convict instruction required a completed robbery, not an attempted one. If *Knight* is good law, Knight's murder conviction must be dismissed with prejudice.

But I write separately because this result is not just. I recognize that no party has asked us to consider overruling *Knight*, but we have "inherent authority to consider issues not raised by the parties if necessary to reach a proper decision" and we may overrule a case that is both incorrect and harmful. *State v. Cantu*, 156 Wn.2d 819, 822 n.1, 132 P.3d 725 (2006) (citing *Siegler v. Kuhlman,* 81 Wn.2d 448, 502 P.2d 1181 (1972)); *Deggs v. Asbestos Corp.*, 186 Wn.2d 716, 727-28, 381 P.3d 32 (2016) (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)). *Knight* was incorrect then and is harmful now. *Knight* was incorrect at the time because it was based on an incorrect understanding of the record and it is harmful now because it requires this court to strike a murder

*In re Pers. Restraint of Knight,* No. 101068-1 (González, C.J., concurring in part; dissenting in part)

conviction for insufficient evidence when the evidence presented was sufficient to support the charge actually made and the verdict reached.[2]

I would overrule *Knight* and vacate Knight's conviction for robbing James Sanders. This would avoid the injustice that follows from our mistakes in our earlier opinion. We would do better to admit we were wrong than to double down on our mistake. But I am constrained to concur with the lead opinion that under an opinion that a majority of the court believes should stand, insufficient evidence supports Knight's felony murder conviction.

With these observations, I respectfully concur in part and dissent in part.

González, C.J.

_____

[2] I also respectfully disagree with the dissent that the rule of this court is that when there is no majority opinion, the holding is the narrowest ground on which a majority agreed. Dissent at 14. I acknowledge there are cases that have so asserted. But many other cases have held, and I agree, that "[a] principle of law reached by a majority of the court, even in a fractured opinion, is not considered a plurality but rather binding precedent," regardless of whether those principles are found in the majority, concurrence, or dissent. *In re Det. of Reyes*, 184 Wn.2d 340, 346, 358 P.3d 394 (2015) (citing *Wright v. Terrell*, 162 Wn.2d 192, 195-96, 170 P.3d 570 (2007)); *see Saleemi v. Doctor's Assocs*, 176 Wn.2d 368, 385-86, 292 P.3d 108 (2013). The relevant, but unhelpful, holding of *State v. Muhammad* is that Muhammad's felony murder and rape convictions merged for double jeopardy purposes. 194 Wn.2d 577, 628, 451 P.3d 1060 (2019) (opinion of Gordon McCloud, J.); *id.* at 637 (Madsen, J., concurring/dissenting).

6

*In re Pers. Restraint of Knight (Amanda Christine)*

No. 101068-1

MADSEN, J. (dissenting)—The lead opinion's rewrite of *In re Personal Restraint of Knight*, 196 Wn.2d 330, 473 P.3d 663 (2020), threatens the integrity of this court's decision-making process. One need only read the positions taken by dissenting members of the *Knight* court to realize that the facts recited by the lead opinion today are not the facts on which any members of the court in *Knight* relied.

In *Knight*, we upheld Amanda Knight's separate convictions for felony murder and first degree robbery against a double jeopardy challenge. Inherent in our analysis, indeed its central premise, is that Knight's felony murder conviction was based on the robbery of James Sanders's wedding ring. Based on the robbery of the wedding ring, we were asked to consider whether Knight's separate convictions for felony murder based on that robbery and the robbery itself must merge because the conviction for both crimes would result in unconstitutional multiple punishments in violation of double jeopardy protections.

Ultimately, we rejected Knight's double jeopardy claim based on the independent purpose and effects exception to multiple punishments. That exception answers whether

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101068-1
Madsen, J., dissenting

two felonies, one operating as the predicate for the other, should nevertheless be punished separately because of the independent effects caused by those crimes. *State v. Freeman*, 153 Wn.2d 765, 778-79, 108 P.3d 753 (2005). Where a defendant's acts support charges under two criminal statutes—in Knight's case, felony murder and robbery—double jeopardy is not violated if the legislature intended to punish those offenses separately. *Id.* at 771. Knight and her accomplices engaged in a home invasion robbery of the Sanderses' home. During that home invasion, the robbery of the wedding rings created a situation in which the family was zip-tied and held at gunpoint, allowing the invaders to commit additional offenses, culminating in the death of James Sanders. The murder itself occurred during the attempted robbery of the safe—the end in the series of robberies and attempted robberies that stemmed from the first robbery, that of the wedding rings, which the Sanderses had advertised online and which were the intended objects of the home invasion.

Contrary to the lead opinion's assertion, the discussion of these events in *Knight* does not make the attempted robbery of the safe the predicate of the felony murder. As *all* of the justices in *Knight* agreed, the predicate for Sanders's murder is the robbery of the rings. While there was disagreement regarding the independent effect doctrine, the majority of this court held that the attempted robbery of the safe constituted the independent effect of the robbery and the murder, justifying an exception to the double jeopardy merger doctrine, not the predicate crime for felony murder.

2

No. 101068-1
Madsen, J., dissenting

Our 2020 decision in *Knight*, properly read, discusses these statements about the attempted robbery of the safe within the accepted framework of our double jeopardy case law, specifically the "well established exception" to merger—the independent purpose test. *Freeman*, 153 Wn.2d at 778. The lead opinion ignores this framework, choosing instead to decontextualize the references to the robbery of the safe, resulting in a misinterpretation of our 2020 decision and unjustifiably overturning Knight's conviction for felony murder.

In the view of the entire court in 2020, including the dissent, Knight's felony murder conviction was premised on the robbery of James Sanders's wedding ring. Our 2020 decision is now the law of the case. RAP 2.5(c); *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992) (a subsequent appellate court will not revisit the holdings of the first appellate court in the same case). And the law of the case for Knight's second personal restraint petition (PRP) says nothing about the robbery of the safe as the predicate offense for felony murder. To claim otherwise, as the lead opinion does, ignores the law of the case and undermines public confidence in the court as an institution that follows its own precedent and rules, and is mindful of its responsibility to decide the law honestly and consistently.

Our 2020 decision holds unambiguously that the robbery of the rings is the predicate for felony murder. Thus, the jury's convictions were supported by sufficient evidence and Knight's insufficiency claim should be rejected.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101068-1
Madsen, J., dissenting

Discussion

Because both Knight's current petition and the lead opinion here turn on the meaning of our 2020 decision, we must start there.

1. The 2020 Majority Decision Did Not Hold the Robbery of the Safe Was the Underlying Offense for Felony Murder

In a 5-4 vote, this court held that Knight's convictions for felony murder and robbery against James Sanders did not violate double jeopardy. *Knight*, 196 Wn.2d at 336. The 2020 majority opinion began with the basics.

The federal and state constitutions protect defendants from being convicted for the same offense twice. *Id.* (citing U.S. CONST. amend. V; WASH. CONST. art. I, § 9). Double jeopardy concerns arise generally when the State attempts to prosecute twice for the same crime in a subsequent prosecution. However, double jeopardy may be implicated when the State brings multiple charges within the same prosecution, as in this case. *See State v. Calle*, 125 Wn.2d 769, 772, 888 P.2d 155 (1995).

To constitute the "'same offense'" under double jeopardy, two offenses must be the same in both law and fact. *Knight*, 196 Wn.2d at 336 (quoting *State v. Arndt*, 194 Wn.2d 784, 815, 453 P.3d 696 (2019)). When a defendant's actions support charges under two criminal statutes within the same prosecution, reviewing courts look to legislative intent to determine whether the offenses are the same. *Id.* (quoting *Freeman*, 153 Wn.2d at 771).

In this legislative intent inquiry, courts first scrutinize the statutes themselves. *Id.* The 2020 opinion noted that neither the statutes for felony murder and first degree

4

No. 101068-1
Madsen, J., dissenting

robbery nor their legislative history specifically authorized separate punishments. *Id.* (citing RCW 9A.32.030; RCW 9A.56.190, .200). Thus, the majority concluded that the legislative intent was unclear.

Next, the 2020 majority reviewed Knight's convictions under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The *Blockburger* test provides that when the same act or transaction violates two distinct statutory provisions, to determine whether there are two offenses or one, the test is whether each provision requires proof of a fact that the other does not. *Freeman*, 153 Wn.2d at 772. The 2020 majority found the felony murder and robbery of James Sanders satisfied *Blockburger*, but pointed out that other exceptions may apply. *Knight*, 196 Wn.2d at 337. Pursuant to the merger doctrine, when an offense's degree is raised by conduct separately criminalized by the legislature, courts presume the legislature intended to punish both offenses through the greater sentence for the greater crime. *Id.* (quoting *Freeman*, 153 Wn.2d at 772-73). The majority opinion determined that felony murder is an offense raised by the separately criminalized conduct of first degree robbery. *Id.*

Nevertheless, the majority stated, its double jeopardy analysis was not finished. Even if two offenses appear to be the same or for charges that would merge "'on an abstract level,'" if an independent purpose or effect exists for each, they may be punished separately. *Id.* (quoting *Freeman*, 153 Wn.2d at 773). This exception to merger requires a crime to "'injure the person or property of the victim or others in a separate and distinct

5

No. 101068-1
Madsen, J., dissenting

manner from the crime for which it also serves as an element.'" *Id.* at 338 (internal quotation marks omitted) (quoting *Arndt*, 194 Wn.2d at 819).

The 2020 majority decision then concluded that a "clear independent effect" distinguished James Sanders's murder from the separately charged robbery. *Id.* Knight had "completed" the first charged robbery when she and her accomplices took Sanders's ring and held him at gunpoint. *Id.* That is, the act of taking the ring had been accomplished, but Knight and her accomplices had not completed the act of robbery; they had not fled the scene, rather they continued to commit other takings and attempted takings.

After the ring was taken, Sanders was hauled from the floor to show the intruders the safe. The continuing crimes, including this second robbery of the safe, culminated in Sanders's death. *Id.* at 338-39. Sanders's person or property was injured in a distinct manner when he was robbed of his ring and then injured in a distinct manner when he was shot during the robbery of the safe. *Id.* at 339. The majority's discussion of the safe coincides with the killing of James Sanders in order to explain the independent effect of the robbery and murder.

*Knight*'s discussion of the "completed" robbery of the ring distinguished this case from *Freeman*, 153 Wn.2d at 769.[1] There, a defendant's first degree assault and

---

[1] The 2020 opinion's use of the word "complete" may have caused confusion. Knight's insufficiency argument rests, in part, on her assertion that this court "held" that the robbery of the rings was "complete." However, the word "complete" was used in analyzing the separate effects analysis under double jeopardy. It was not used to suggest the robbery was complete in the legal

6

No. 101068-1
Madsen, J., dissenting

first degree robbery charges were merged when the defendant ordered the victim at

gunpoint to hand over his valuables, the victim refused, and the defendant shot and

robbed the victim. *Id*. This court held that the shooting facilitated the robbery in a single

transaction, thus the charges had no independent purposes or effects. *Id*. at 779.

Knight's convictions, by contrast, resulted in separate injuries. These injuries persuaded

this court to hold that Knight's convictions against Sanders (robbery of his wedding ring

and murder) had independent effects from each other, did not merge, and therefore did

not violate double jeopardy.[2]

It is worth noting that the facts supporting Knight's felony murder charge are more

complicated than other felony murder cases. Though not directly involving a felony

murder charge, *Freeman* presents a common scenario for such an offense: a victim is

___

sense. In law, the State can charge either robbery or attempted robbery. RCW 9A.32.030(1)(c)
(a person is guilty of murder when they commit or attempt to commit the crime of robbery).
[2] The *Knight* majority also disagreed with the Court of Appeals' "transactional analysis of
robbery" to conclude the taking of the ring had not been completed until James Sanders was shot
and was only complete when Knight and her accomplices fled. 196 Wn.2d at 339. The court
explained that the transactional view concerns the force required to complete a robbery, not the
offense itself. *Id*. (citing *State v. Johnson*, 155 Wn.2d 609, 611, 121 P.3d 91 (2005)). Today's
lead opinion reasons that our 2020 decision did not "make clumsy use of the word 'complete' . . .
[that] decision repeatedly, emphatically, and through the use of different synonyms insisted that
the murder of Mr. Sanders occurred in furtherance of a different robbery than the robbery of the
rings that formed the basis of Ms. Knight's robbery conviction." Lead opinion at 14 (footnote
and internal quotation marks omitted). Again, the lead opinion reads our past decision out of
context. By selecting portions of *Knight* that discuss James Sanders's murder in reference to the
robbery of the safe, the lead opinion ignores the opinion's analytical architecture—we were
reviewing Knight's double jeopardy claim, specifically whether her convictions for felony
murder based on the robbery of the wedding ring must merge. It would be Kafkaesque indeed
for this court to rule counter to the record and Knight's *own claim* that the predicate felony was
the robbery of the safe rather than robbery of the rings. *Knight*, 196 Wn.2d at 333 ("Knight now
challenges these convictions under double jeopardy . . . , arguing that her robbery and felony
murder conviction against James . . . should merge.").

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101068-1
Madsen, J., dissenting

robbed and then shot to facilitate the robbery. 153 Wn.2d at 769, 779. Here, Knight and her accomplices took the wedding rings, allowing the group to zip-tie the Sanders family; continue ransacking the house for other valuables; and commit other crimes, including the attempted robbery of the safe; and resulting in James Sanders's murder. Unlike the defendant in *Freeman*, who shot the robbery victim to facilitate the single predicate crime, Knight and the other home invaders committed numerous offenses after taking the wedding rings (the predicate crime). The murder did not simply facilitate the crime of robbery of the rings. That robbery set up the subsequent offenses, ultimately leading to murder.

Finally, the 2020 majority concluded that the State made a proper election. Prosecutors listed each count and the acts supporting the charged offenses during closing arguments. *Knight*, 196 Wn.2d at 340 (citing *State v. Carson*, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015)). Though the State did not do so with precision for the felony murder and robbery charges, it set out the sequence of events to show "the robbery of the ring was complete before Knight's accomplices engaged in another robbery" of the safe and the resulting murder. *Id.*[3]

---

[3] According to the lead opinion, *Knight*'s reference to the transactional analysis and unit of prosecution is an attempt to show "consisten[cy] with the jury instructions" that required two separately charged robberies. Lead opinion at 16. Again, context provides the answer. *Knight* disagreed with the Court of Appeals' reliance on the transactional analysis and disagreed with *Knight's argument* that the jury instructions were insufficiently specific to connect which acts support which convictions. *Knight*, 196 Wn.2d at 339-40. The *Knight* court noted that none of the cases Knight cited held that a lack of specificity supported a double jeopardy violation. *Id.* at 340. The court then explained that *Knight's* argument "seem[ed] to relate" to *State v. Coleman*, 159 Wn.2d 509, 150 P.3d 1126 (2007), and, depending on the prosecution's statements at closing

8

No. 101068-1
Madsen, J., dissenting

Four members of the court dissented. *Id.* at 344 (Yu, J., dissenting). Importantly, however, the dissent agreed with the majority's logical approach to double jeopardy—specifically, the offenses for robbery and felony murder were the same under *Blockburger* and would merge but for the independent purpose and effects exception. *Id.* at 344-45. The dissent faulted the majority for relying on the attempted robbery of the safe as an independent effect of the murder when the jury instructions required the murder to occur in the course of or furtherance of the robbery of James Sanders. *Id.* at 345. The dissent did not argue or characterize the majority as predicating felony murder on robbery of the safe. The dissent read the majority as identifying the murder's "independent effect" of facilitating the attempted robbery of the safe. *Id*. at 345.[4]

Read properly, the 2020 majority opinion *did not* hold the robbery of the safe was the predicate offense for Knight's felony murder conviction. It reviewed Knight's claim that her convictions for robbery of the wedding ring and felony murder must merge. *See id.* at 333. To analyze this argument, the majority applied our double jeopardy case law, specifically the independent purposes and effects inquiry. *Id.* at 337-38. In that context, the majority identified the distinct injuries James Sanders suffered during the home invasion and noted that during one criminal act (attempted robbery of the safe), Sanders was murdered. While the robbery of the wedding rings, the original purpose of the home

---

argument, could have resulted in the separate and distinct issue of improper election. *See id.* at 339-40.

[4] The dissent also disagreed that the State properly elected the facts it relied on for the murder conviction and would have held the robbery of James merged with his murder.

9

No. 101068-1
Madsen, J., dissenting

invasion, resulted in the murder of James Sanders, it had the separate effect of setting up a series of additional injuries to the Sanders family, including the attempted robbery of the safe. *Id.* at 338-39. The dissent agreed that the independent purpose test is an exception to the merger doctrine, but it parted ways with the majority's application of the test to the facts of this case.

Put another way, the 2020 majority opinion's double jeopardy analysis *presumes* the felony murder conviction was based on the robbery of the wedding ring. Otherwise this court had no reason to consider whether two convictions that would generally merge may nevertheless be separately punished if they have independent effects. *See id.* at 337-38.

The majority's references to the safe were intended to explain the independent effects by identifying separate and distinct injuries to James Sanders. The independent effects inquiry explores whether other effects or injuries exist in addition to the purpose or effect of furthering the underlying felony. *See Freeman*, 153 Wn.2d at 778-79. The 2020 decision's references to the Sanders family's safe did not transform the attempted robbery of the safe into the predicate for felony murder; it was identified only as an additional effect or injury.

Yet Knight now contends that our 2020 decision did just that. Today's lead opinion inexplicably agrees—despite hearing this case only three years ago and, as explained above, *no member* of the 2020 court ever viewed the safe robbery as the predicate offense to felony murder. *See Knight*, 196 Wn.2d at 338-39; *id.* at 344 (Yu, J.,

10

dissenting). Indeed, the dissent to our order denying reconsideration and the dissent to

the 2020 opinion expressly accepted that the "key question for us was whether Knight's

convictions of both (1) felony-murder-based-on-robbery of James Sanders and (2)

*robbery of James Sanders*, violated double jeopardy." Ord. Den. Mot. for Recons., *In re*

*Pers. Restraint of Knight*, No. 97066-1, at 2 (Gordon McCloud, J., dissenting) (emphasis

added); *Knight*, 196 Wn.2d at 344-45 (Yu, J., dissenting). Where the court disagreed was

the application of the exception to merger pursuant to the independent purposes test.

Ord. Den. Mot. for Recons., *supra*, at 3; *Knight*, 196 Wn.2d at 345 (Yu, J., dissenting).

From the Court of Appeals to the reconsideration order in this court, no opinion

disagreed that the robbery of the ring served as the predicate offense for felony murder.

*In re Pers. Restraint of Knight*, No. 49337-3-II, slip op. at 10-11 (Wash. Ct. App.

March 14, 2019) (unpublished) (Melnick, J., lead opinion) (concluding James Sanders's

death occurred in the course of or furtherance of the robbery of the ring),

https://www.courts.wa.gov/opinions/pdf/D2%2049337-3-

II%20Unpublished%20Opinion.pdf; *id.* at 17 (Bjorgen, J.P.T., concurring in part,

dissenting in part); *id.* at 22 (Sutton, J., dissenting in part); *Knight*, 196 Wn.2d at 336, 338

(concluding Knight's convictions for felony murder and robbery of the ring do not violate

double jeopardy); *id.* at 345 (Yu, J., dissenting) (disagreeing that the robbery of the ring

served independent effects from the murder); *see also* Ord. Den. Mot. for Recons., *supra*,

at 6-7 (noting the State affirmatively relied on the taking of the ring when explaining the

No. 101068-1
Madsen, J., dissenting

robbery on which the felony murder was based and did not assert that it was the taking of the safe as predicate for the murder).

The lead opinion charges the State with recharacterizing the basis of Knight's felony murder conviction. Lead opinion at 13. For example, the State argued the second robbery (the predicate for felony murder) was the taking of any number of other valuables from the Sanders home, but the State then changed course at oral argument saying that there were never two distinct robberies. *Id.* at 13-14. The lead opinion misunderstands two points. First, any shifting basis on the State's part for the predicate felony in its appellate briefing and at oral argument was offered as a response to Knight's *insufficiency of the evidence* claim, not to a *claim of double jeopardy*. The "critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis omitted). The record, not an attorney's argument, guides our inquiry. *See id.* at 318-19. Second, if the State had succeeded in showing that evidence of other robberies could have supported Knight's felony murder conviction, separate issues may have arisen, such as whether the State properly elected at trial which of the several robberies it was relying

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101068-1
Madsen, J., dissenting

on for the felony murder charge. In that case, the remedy would not be reversal based on insufficient evidence but on the State's failure to elect.

The lead opinion's analysis rests entirely on the meaning of our 2020 decision. Tellingly, the lead opinion devotes little time to explaining how it arrived at its conclusion that "[t]he decision governing Ms. Knight's prior petition held the robbery that provided the basis for the felony murder charge was the robbery of the safe." Lead opinion at 12 (citing *Knight*, 196 Wn.2d at 339 ("concluding that Mr. Sanders was fatally shot 'in furtherance of Knight's accomplices robbing the Sanderses *of their safe*'")). Instead of analyzing the facts and law as set out in the 2020 decision, the lead opinion here cites a different case for the assertion that double jeopardy as a general matter precludes punishing felony murder separately from its underlying felony. Lead opinion at 17 (citing *State v. Muhammad*, 194 Wn.2d 577, 619, 626, 451 P.3d 1060 (2019) (plurality opinion); *id.* at 637 (Madsen, J., concurring/dissenting)). This is problematic for three reasons.

First, the lead opinion has little recourse but to look outside of our *Knight* opinion because that decision plainly *did not* hold Knight's felony murder conviction was predicated on the robbery of the safe. *See* lead opinion at 15.

Second, *Muhammad* does not stand for the proposition the lead opinion says it does. According to the lead decision, *Muhammad* held that double jeopardy precludes punishing felony murder separately from its predicate offense and that a defendant can be convicted separately only if felony murder is based on a different felony from other

13

No. 101068-1
Madsen, J., dissenting

felonies found by a jury. *Id.* at 17-18 (citing *Muhammad*, 194 Wn.2d at 619, 626, 637).

Therefore, *Knight* had to conclude the murder and robbery convictions were based on

separate conduct in order to justify separate convictions and punishments. *Id.* As I have

just explained, *Knight* did not make this conclusion nor was it required to because it

relied on the exception to merger.

My partial concurrence and dissent provided the votes necessary to achieve a

holding in *Muhammad*. In my view, the felony murder charge encompassed all of the

elements of first degree rape, constituting one crime under *Blockburger*, 284 U.S. at 304.

Therefore, two offenses containing the same elements must merge to protect against

double jeopardy. *Muhammad*, 194 Wn.2d at 637 (Madsen, J., concurring/dissenting). I

said then and I agree now with this *general rule*. However, I did not agree with and

therefore did not sign Justice Gordon McCloud's opinion concluding that separate

convictions and punishments can stand *only* if felony murder is based on a felony

different from its predicate. *See* lead opinion at 18 (citing *Muhammad*, 194 Wn.2d at

626); *Muhammad*, 194 Wn.2d at 626 ("The exception to the merger rule and felony

murder are irreconcilable and cannot coexist.").

When there is no majority opinion in a case, the holding is the narrowest ground

on which a majority agreed. *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 532 n.7,

242 P.3d 866 (2010) (citing *State v. Patton*, 167 Wn.2d 379, 391, 219 P.3d 651 (2009)).

Justice Gordon McCloud's opinion in *Muhammad* received three votes. That opinion

concludes, in relevant part, that the two convictions (rape and felony murder) must merge

14

No. 101068-1
Madsen, J., dissenting

so as not to violate double jeopardy. *Muhammad*, 194 Wn.2d at 622. The opinion also

concluded that the exception to merger (independent purpose and effects) did not apply,

in response to the lead opinion by Justice Wiggins. *See id.* My partial concurrence

agreed with Justice Gordon McCloud on the issue of double jeopardy, *specifically*

"[b]ecause felony murder encompasses all of the elements of first degree rape, they

constitute one crime" and must merge. *Id*. at 637 (Madsen, J., concurring/dissenting).

My opinion did not discuss the exception to merger doctrine, unlike Justice Gordon

McCloud's opinion. Accordingly, the conclusion that "[t]he exception to the merger rule

and felony murder are irreconcilable and cannot coexist" did not receive five votes and is

not precedential. *Id.* at 626; *see Francis*, 170 Wn.2d at 532 n.7. The lead opinion in this

case persists in citing the proposition as binding law. *See, e.g.*, majority at 18 n.12, 20

n.13. It is not. It was not decided in *Muhammad* and, until today, had yet to be

resolved.[5]

Third, our double jeopardy case law holds the opposite—as this court's 2020

decision made clear, viz., applying the independent purpose exception. *See Knight*, 196

Wn.2d at 337-38 ("[U]nder the merger doctrine, 'even if on an abstract level two

---

[5] If the lead opinion wished to resolve the issue, it should have done so openly and in the appropriate circumstance; namely, a case squarely presenting the issue with responsive briefing from parties and amici curiae, rather than retrofitting a previous case to support its holding in the current case. This willingness to rewrite and quietly transform settled case law is alarming. As the highest court in Washington State, our duty is not just producing a correct and just outcome—equally important is the *way* by which we arrive at that outcome. Ignoring the rules that guide our analysis can be inconvenient, even maddening at times. Yet each time we ignore and flout those rules, we lessen the weight of our opinions and devalue the judicial process. This court must hold itself to a higher standard.

15

No. 101068-1
Madsen, J., dissenting

convictions appear to be for the same offense or for charges that would merge, if there is

an independent purpose or effect to each, they may be punished as separate offenses.'"

(quoting *Freeman*, 153 Wn.2d at 773)). *Knight* relied on *Freeman*'s articulation of the

exception, reasoning that the robbery of the rings was the predicate of felony murder and

constituted one complete robbery; the robbery of the safe was a second, incomplete

robbery leading to James Sanders's murder—independent and additional effects. *Id.* at

338-40 (quoting and citing *Freeman*, 153 Wn.2d at 769, 779; quoting *Arndt*, 194 Wn.2d

at 819). *Freeman* involved first degree robbery premised on assault in one transaction

with the shooting furthering the robbery. *See* 153 Wn.2d at 769, 779. That is, one

predicate offense (assault) and the subject offense (robbery). Because we found no

independent effect, we concluded the exception to merger did not apply. But we did not

hold or even caution that the exception could never apply in such a circumstance. Nor

did *Muhammad*. Even if it did, *Muhammad* did not overrule *Freeman* and neither has the

lead opinion in the present case. Instead, the lead opinion has elevated *Muhammad* to

binding precedent: that felony murder cannot be punished separately from its underlying

felony. This is plainly in tension with *Freeman*.[6]

---

[6] Readers will no doubt ask, "Which is correct, *Muhammad* or *Freeman*?" The lead opinion leaves this question for another day, setting up an inevitable conflict future courts must muddle through and should give pause to the members of this court who signed both the concurrence in *Muhammad* and today's lead opinion, as well as the dissenting justices in *Knight*, who acknowledged the independent purpose and effect exception. Future courts and parties will also be left to determine whether the exception to merger continues to exist in the context of felony murder. The lead opinion's declaration that the issue is settled rings hollow when it relies on a three-vote concurrence in *Muhammad* that does not carry the weight of precedent. *See* 194 Wn.2d at 626 (opinion of Gordon McCloud, J.) (stating the predicate felony always merges with

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101068-1
Madsen, J., dissenting

The lead opinion acknowledges the existence of the independent purpose exception but cautions that it "'would not apply' based on facts 'not found by the jury.'" Lead opinion at 19 (quoting *Freeman*, 153 Wn.2d at 779). The lead opinion latches on to this correct statement of the law to declare that the exception has no bearing here because it cannot save a jury finding based on insufficient evidence and insufficient evidence supports Knight's felony murder conviction, which our 2020 decision held was premised on robbery of the Sanderses' safe. Lead opinion at 13-20. Such circular reasoning is all the lead opinion can offer because insufficient evidence and jury instructions are irrelevant. Knight's argument, and that of the lead opinion, rests not on the facts but on how the 2020 decision characterized those facts. To be clear, our 2020 decision thoroughly and thoughtfully considered those facts in the context of double jeopardy and upheld Knight's convictions pursuant to the independent purpose exception.

2. The Lead Opinion Effectively Overrules the 2020 Decision

The lead opinion fails to read our 2020 decision in context. The lead opinion focuses only on the statements about the robbery of the Sanders family's safe without situating those statements in the framework of double jeopardy, which was the only issue the court was asked to decide. This does significant harm.

---

felony murder); *see also id*. at 637 (Madsen, J., concurring/dissenting) (concluding the conviction for rape merged with the conviction for felony murder); *State v. Barber*, 170 Wn.2d 854, 864, 248 P.3d 494 (2011) (explaining that a past decision is "incorrect if it relies on authority to support a proposition that the authority itself does not actually support").

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101068-1
Madsen, J., dissenting

As I have explored in detail above, our 2020 decision simply does not hold what the lead opinion says it does. By claiming the opposite, the lead opinion suggests the previous court did not understand double jeopardy, the facts of Knight's case, or both. *See* lead opinion at 2 (stating the 2020 decision did "not anticipate[]" Knight would raise a challenge that insufficient evidence of a complete robbery of the safe was presented to support felony murder). Yet it is the lead opinion that appears to misunderstand double jeopardy when it fails to contextualize how the 2020 decision discussed the safe robbery—the resulting injury (death of James Sanders) was an independent effect from the robbery of the ring.

Moreover, the lead opinion does not misconstrue a minor fact or point of law in the 2020 decision. The lead opinion replaces the predicate felony of the robbery of the ring with the robbery of the safe. This is the *critical fact* of the 2020 decision. This is more than interpreting. It is rewriting.

While rewriting settled case law is convenient, it ignores the established process that this court and all appellate courts must use when revisiting a prior decision. Adherence to past decisions, stare decisis, is fundamental to our judicial system. *See State v. Barber*, 170 Wn.2d 854, 863, 248 P.3d 494 (2011). It promotes predictable and consistent development of legal doctrines and furthers the actual and perceived integrity of the judicial process. *See id.*; *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). This court will revisit a prior decision only on "'a clear

18

No. 101068-1
Madsen, J., dissenting

showing that an established rule is incorrect and harmful.'" *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016) (quoting *Stranger Creek*, 77 Wn.2d at 653).

No party in this case argued that the 2020 decision was incorrect and harmful.[7] Rather, Knight advanced an erroneous reading of that decision and the lead opinion eagerly adopted it. Inherent in Knight's (and now the lead opinion's) argument is that the 2020 decision stands for a proposition it does not. The lead opinion did not overrule what the 2020 decision plainly held—the lead opinion rewrites it, disregarding our precedent and the fundamental principle of stare decisis. The lead opinion creates confusion under the guise of clarification and undermines the public perception that this court follows its own rules.

The lead opinion answers the criticism that it is breaking with the decision-making process of this court by doubling down on its original error—reimagining the holding of our 2020 decision that the robbery of the safe was the predicate offense for felony murder. The lead opinion goes on to say the dissenting justices in *Knight* focused on the jury instructions requiring a completed robbery, which the safe robbery was not; thus, in the dissenting justices' view, the robbery of the rings and felony murder convictions had to merge. *See* lead opinion at 21 n.15. But, as I have repeatedly attempted to explain in this dissent, our 2020 decision *held* that the robbery of the rings and felony murder did

---

[7] Nor did any party argue the independent purpose exception was incorrect. Today's lead opinion is obviously dissatisfied with that exception, but rather than grappling with its application in *Knight*, the lead opinion rewrites the case. The dissatisfaction with the independent purpose exception remains unresolved and now operates in a more confusing precedential framework.

19

No. 101068-1
Madsen, J., dissenting

not merge because they resulted in independent purposes and effects. In other words, the

jury instructions were not implicated in *Knight*'s analysis because the robbery of the rings

was *always* understood to be the predicate felony and a completed robbery.

Regardless of the lead opinion's best efforts, our decision in 2020 did not disturb

the predicate offense for felony murder. It was then and remains now the robbery of

James Sanders's wedding ring. The lead opinion may console itself that it is merely

following precedent, but even a casual reader will see that is not the case. *See, e.g.*, *id.* at

17-18 (discussing the separate opinions and holdings on felony murder in *Muhammad*).

3. The 2020 Decision Is the Law of the Case

Knight's first PRP challenged her felony murder and robbery convictions as

violating double jeopardy. As the preceding discussion demonstrates, the 2020 court

reviewed Knight's claim and reasoned that an independent effect resulted from the

robbery of the safe as compared to the robbery of the ring, and therefore no double

jeopardy violation occurred. The 2020 decision is now the law of the case for Knight's

second petition, which depends entirely on that decision.

The law of the case doctrine "stands for the proposition that once there is an

appellate holding enunciating a principle of law, that holding will be followed in

subsequent stages of the same litigation." *Roberson v. Perez*, 156 Wn.2d 33, 41, 123

P.3d 844 (2005). Therefore, questions an appellate court has answered will not be

reconsidered in a subsequent appeal if there is no substantial change in the evidence.

*Lutheran Day Care*, 119 Wn.2d at 113.

20

No. 101068-1
Madsen, J., dissenting

Here, as previously noted, Knight contends that the 2020 decision identified the robbery of the safe as the predicate offense for felony murder. Because the safe robbery was not complete when the jury instructions required a completed offense, Knight claims insufficient evidence supports her murder conviction. This is an incorrect reading of our decision and does not point to any substantial change in the evidence warranting a second look at her original case.

Our 2020 decision makes resolving Knight's second PRP a straightforward matter. The 2020 majority opinion held (and the dissenting justices agreed), the robbery of James Sanders's wedding ring served as the predicate offense for the felony murder charge. A majority of the court concluded that these offenses do not merge because the injuries Sanders sustained were distinct and separate from each other, satisfying the independent purpose exception to merger. Therefore, I would dismiss Knight's petition as untimely. *See* RCW 10.73.100(4).

With these considerations in mind, I respectfully dissent.

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 101068-1
Madsen, J., dissenting

<u>Madsen, J.</u>

<u>Johnson, J.</u>

<u>Owens, J.</u>

<u>Stephens, J.</u>