# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60128-1-II |
| Respondent, | |
| v. | |
| JARED JASON BAILEY, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Jared J. Bailey appeals his convictions for two counts of felony harassment. Bailey was self-represented during his trial. Bailey contends that he did not knowingly, intelligently, and voluntarily waive his right to counsel. The State agrees. We accept the State's concession and reverse Bailey's convictions. Because we hold that sufficient evidence does not support Bailey's convictions, we remand to the trial court to vacate the convictions and dismiss the harassment charges with prejudice.

## FACTS

In 2022, the City of Olympia charged Bailey with assault in the fourth degree. During the prosecution of that charge, Bailey would send multiple e-mails per week to the prosecutors, resulting in roughly a hundred e-mails.

In one e-mail, Bailey requested a copy of the law license from one of the prosecutors, Rosemary Fitzgerald (formerly Hewitson). In another e-mail, Bailey threatened Fitzgerald and another City of Olympia prosecutor, Tye Graham. The e-mail stated that Bailey was warning the

prosecutors "at the appointed hour" that they would be arrested . . . [by] the Militia." He warns that this alleged militia was coming after them and that the militia had been "deputized by the United State Marshal Service" and that if the prosecutors resist, they "will be met with overwhelming force and a permanent solution" and would be "neutralized." Ex. 2.

The e-mail went on to threaten legal action and that the recommended remedy would be "the death penalty." Ex. 2. Bailey then stated that he had given the prosecutors the "opportunity to repent" but they refused; therefore, he was warning them that they were mistaken to believe they were "above the law." Ex. 2. Bailey ended the e-mail with, "WHEREAS; The Kukish rebellion against the Lord shall be out down forever; and should your peers marvel at your fall; forever." Ex. 2.

The prosecutors contacted the police. The police interviewed the prosecutors and recorded their interview. In the video, Fitzgerald stated that Bailey was "unpredictable" and that he "scared" her. Ex. 3 at 18:10, 18:30. Graham stated that he did not think Bailey would kill him, but Fitzgerald added there was "enough to have a fear." RP (Jan. 2, 2024) at 254.[1] Graham stated that he had a lot of experience with threats from criminal defendants and did not worry that those individuals would assault him, but "this one did make me [worry]." Ex. 3 at 20:50; RP (Jan. 2, 2024) at 261. Both acknowledged that Bailey had not come to their offices.

In the video, Fitzgerald mentioned that there were some racial undertones to Bailey's communication with the prosecutors regarding the attorneys and the judge being white. And he referenced the differing ancestral histories between the parties. Bailey is a Black man. Graham stated that Bailey was a sovereign citizen type with a fixation on heritage and the land.

---

[1] Exhibit 3 was played for the jury during Bailey's trial, so the report of proceedings includes a transcript of the hearing. This citation is referring to that portion of the record.

The State charged Bailey with two counts of felony harassment—criminal justice participant.

At his preliminary hearing on the felony harassment charges, Bailey was represented by a public defender. Defense counsel informed the court that Bailey was "likely to ask to be permitted to not be represented by counsel." Rep. of Proc. (RP) (Dec. 9, 2022) at 50.

The trial court explained to Bailey that he had a constitutional right to counsel. The court inquired whether Bailey wanted to retain counsel or wanted the court to appoint an attorney. Bailey responded that he was opposed to being represented by someone "not licensed . . . to practice law" and he believed that recent legislation stripped all attorneys of their licenses in Washington. RP (Dec. 9, 2022) at 53. Bailey then stated, "And so, as opposed to being represented by someone who is not licensed . . . I would prefer to represent myself. I am not pro se." RP (Dec. 9, 2022) at 53.

The trial court encouraged Bailey to file a written motion to proceed without counsel so the court could "engage [him] in some questions" to ensure he understood his "rights" and the "consequences." RP (Dec. 9, 2022) at 53. The court clarified, "that's a more involved process" and it was "not making that decision." RP (Dec. 9, 2022) at 53-54.

A few weeks later, at Bailey's arraignment, Bailey again stated that he did not want someone "not licensed as a lawyer" to represent him but that he was "not pro se." RP (Dec. 20, 2022) at 5-6. The trial court informed Bailey that the State was charging him with two counts of felony harassment and that he had two options regarding counsel—either "[t]he court can . . . assign counsel by finding you eligible for appointment of counsel at public expense, or the court can engage with you to determine whether or not you're waiving your right to appointment of

counsel." RP (Dec. 20, 2022) at 11. The court did not question Bailey further about counsel and went on to schedule future hearing dates.

At the next hearing, the State informed the trial court that it was concerned that the colloquy at the arraignment was insufficient for Bailey to waive his right to counsel. Bailey responded that he thought "the court had already made the determination that Jared Bailey is able to represent himself." RP (Jan. 5, 2023) at 19. The court clarified that while Bailey was indigent and qualifies for the appointment of counsel, he waived that right. Bailey expressed confusion, stating, "I'm not indigent." RP at (Jan. 5, 2023) at 20. The court responded that Bailey had already been found to be eligible for a "lawyer at no expense . . . [b]ut in this case we've already dealt with your attorney status. At the present you're representing yourself." RP (Jan. 5, 2023) at 20-21.

Still concerned about the waiver of the right to counsel, the State raised the issue again to the trial court in a subsequent hearing. The State alleged that "there's been no motion or formal request nor has the court gone through what I believe was the appropriate colloquy." RP (Jan. 19, 2023) at 27. The court referred to its arraignment notes and concluded that Bailey requested to proceed as a self-represented litigant at that hearing. The court concluded the arraignment proceedings were sufficient for Bailey to proceed as a self-represented litigant.

Bailey went on to represent himself at trial. The recording of the police interview with Fitzgerald and Graham was admitted at trial.[2] Fitzgerald also testified at trial. Fitzgerald testified that "statements are statements" but Bailey's statements made her fear for her personal safety. RP

---

[2] We question the State's seeming exploitation of Bailey's lack of legal training by securing his agreement to admit this video of a conversation between two law enforcement officers and Graham and Fitzgerald as substantive evidence. The video is hearsay and likely would have been excluded if a hearsay objection was raised. Nevertheless, because the video was admitted as substantive evidence, we must consider it as part of our analysis.

(Jan. 2, 2024) at 287. Graham did not testify at trial. The jury found Bailey guilty as charged. Bailey appeals.

ANALYSIS

I. WAIVER OF COUNSEL

Bailey argues that he did not knowingly, intelligently, and voluntarily waive his right to counsel. The State concedes. We agree with Bailey and the State.

Both the state and federal constitutions guarantee a criminal defendant the right to counsel and the right to self-representation. U.S. CONST. amends. VI and XIV; WASH. CONST. art. 1, § 22. While fundamental, the right to self-representation is not absolute, nor is it self-executing. *State v. Kolocotronis*, 73 Wn.2d 92, 98, 436 P.2d 774 (1968). Because the right to self-representation conflicts with the right of adequate representation, a court must "'indulge in every reasonable presumption' against a defendant's waiver of his or her right to counsel." *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999) (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)); *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991).

To determine whether a defendant's waiver of his right to counsel is knowing, intelligent, and voluntary, the trial court must engage in an on-the-record colloquy with the defendant. *State v. Burns*, 193 Wn.2d 190, 203, 438 P.3d 1183 (2019). "The colloquy should generally include a discussion of the nature of the charges against the defendant, the maximum penalty, and the fact that the defendant will be subject to the technical and procedural rules of the court in the presentation of his case." *Id*. There are additional "nonexhaustive factors" that the court may consider, which include the defendant's "education, experience with the justice system, mental health, and competency." *Id*. The court may also consider "the defendant's behavior, intonation, and willingness to cooperate with the court." *Id*. If the court "conduct[s] an adequate inquiry into

a defendant's request and there is a factual basis" that the waiver of counsel was "knowing, intelligent, and voluntary," we will not disturb the court's discretionary decision on appeal. *Id*. at 204.

Here, the trial court allowed Bailey to proceed self-represented, but our record does not show that the court engaged in a proper on-the-record colloquy with Bailey regarding the factors listed above to determine whether Bailey's waiver of his right to counsel was knowing, intelligent, and voluntary. For this reason, we accept the State's concession that there is no showing that Bailey waived his right to counsel.

II.      SUFFICIENCY OF THE EVIDENCE

Bailey contends that insufficient evidence supports his convictions because the State failed to prove that his actions were a true threat, that he threatened to cause physical damage to property, and that the prosecutors' fear was reasonable. The State responds that we need not reach this issue if we remand for a new trial.

The double jeopardy clause does not afford the State a second opportunity to supply evidence that it failed to muster in the first trial. *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *State v. Thomas*, 166 Wn.2d 380, 394-95, 208 P.3d 1107 (2009). Appellate courts are required to evaluate the sufficiency of the evidence—when the issue is raised—before remanding a matter for correction of any other error. *State v. Rodgers*, 146 Wn.2d 55, 60, 43 P.3d 1 (2002). Therefore, we address whether sufficient evidence supported Bailey's convictions.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the fact at issue beyond a reasonable doubt. *State v. Bergstrom*, 199 Wn.2d 23, 40-41, 502 P.3d 837 (2022). In a

sufficiency of the evidence claim, the defendant admits the truth of the evidence, and we view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). We defer to the trier of fact's resolution of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *Bergstrom*, 199 Wn.2d at 41.

RCW 9A.46.020(1)(a)[3] states that a person is guilty of harassment if they knowingly threaten to cause bodily injury, to cause physical damage to property, to subject a person to physical confinement, or to maliciously do an act to substantially harm a person with respect to physical health or safety. The threat must place "the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(1)(b). Violation of this statute is a felony if the individual harasses a "criminal justice participant." RCW 9A.46.020(2)(b)(iii). Prosecutors are criminal justice participants. RCW 9A.46.020(4)(b). Because the reasonable fear element is dispositive, we address that element first.

Words and conduct are only a threat if a prosecutor's resulting fear is one "that a reasonable [prosecutor] would have under all the circumstances." RCW 9A.46.020(2)(b). Requiring the State to prove that a threat placed a prosecutor in reasonable fear, provides an objective standard by which to evaluate the prosecutor's state of mind. *State v. Talley*, 122 Wn.2d 192, 213, 858 P.2d 217 (1993). Threatening words are not harassment if a prosecutor knows that the individual does not have either the present ability to carry out the threat, or the future ability to carry out the threat. *Id.* at 214.

We look at the totality of the circumstances in determining whether there was sufficient evidence that words constituted threatening statements, and we do not limit our inquiry "to a literal

---

[3] We cite the current version of the statute as the relevant language remains the same.

7

translation of the words spoken." *State v. Boyle*, 183 Wn. App. 1, 8, 335 P.3d 954 (2014). In *Boyle*, Division One upheld a harassment conviction involving a criminal justice participant where the defendant kicked a patrol car door, continually made violent statements, referenced the murder of four police officers in a nearby city, and stated, "You wait and see what happens when I get out." *Id.*

Here, the prosecutors were prosecuting Bailey for assault. He requested a copy of one of the prosecutors' law license. Apparently upset about a perceived injustice, Bailey warned the prosecutors that "at the appointed hour" they would be arrested "[by] the Militia." Ex. 2. He warned that this alleged militia was coming after them and that the militia had been "deputized by the United States Marshal Service" and that if the prosecutors resisted they "will be met with overwhelming force and a permanent solution" and would be "neutralized." Ex. 2. Bailey went on to threaten legal action and that the recommended remedy would be "the death penalty." Ex. 2. Bailey then stated that he had given the prosecutors the "opportunity to repent" but they refused. Ex. 2. He warned them that they were mistaken to believe they were "above the law." Ex. 2. Bailey ended his e-mail with the warning that the prosecutor's would be "[put] down forever" and their "peers [would] marvel at [their] fall; forever." Ex. 2. In the police interview, Fitzgerald stated that Bailey was "unpredictable." Ex. 3 at 18:10. Graham likewise reported that he believed Bailey would assault him.

However, Bailey never came to the prosecutors' office, nor did he take steps to follow through with his threats in any way. As Fitzgerald commented in an apparent dismissal of any severity of the statements, "statements are statements." RP (Jan. 2, 2024) at 287. In the interview video, Graham conveyed that he received a lot of threats in the course of his work and that these other threats did not make him worry. But without providing a basis, he said Bailey's threats did

8

make him worry. But there is no evidence or reasonable inference from the evidence as to why or how Bailey's threats were different from other threats received by Fitzgerald and Graham in the course of their work. While the prosecutors may have expressed a subjective fear, there is no evidence or reasonable inference from the evidence of objective fear given the totality of the circumstances. Therefore, the record does not show that Bailey had the present or future ability to carry out any of his threats nor does the record show that Graham's and Fitzgerald's demeanors while talking about the threats support that they had an objective reasonable fear that Bailey could do so.

Therefore, even when the evidence is viewed in the light most favorable to the State, the State failed to show that, as prosecutors, it was objectively reasonable to fear that Bailey would carry out his threats to cause bodily injury, to cause physical damage to property, to subject the prosecutors to physical confinement, or to maliciously do an act to substantially harm the prosecutors with respect to physical health or safety. Without a showing of reasonable fear, an element of felony harassment, sufficient evidence does not support Bailey's convictions. Accordingly, rather than remanding for a new trial, double jeopardy principles require the convictions to be vacated and the charges dismissed with prejudice. *Rodgers*, 146 Wn.2d at 60.[4]

---

[4] Bailey asserts Fitzgerald's and Graham's fear "did not stem from facts." Br. of Appellant at 51. Bailey continues his argument by identifying what the fear was based on. He argues that "[t]he context of this record reveals that Ms. Fitzgerald['s] and Mr. Graham's unique and irrational fear of Mr. Bailey stemmed from racial bias." Br. of Appellant. at 52. However, given that the standard of review for an insufficiency of the evidence claim requires us to view the evidence in a light most favorable to the State, we hold that the record does not support Bailey's argument. We acknowledge that any fear based on racial bias cannot form the basis for a conclusion that the fear is objectively reasonable. But the parts of the record Bailey relies on to support his assertion do not support a conclusion that the witnesses' fear was based on racial bias without making inferences favorable to the defense; such inferences would not comport with our standard of review. Perhaps it is understandable that this theory was not more thoroughly developed in the trial court through testimony and cross-examination in light of the fact that Bailey was denied his right to counsel.

CONCLUSION

Because our record does not show that Bailey knowingly, intelligently, and voluntarily waived his right to counsel, we accept the State's concession and reverse Bailey's two felony harassment convictions. Because we hold that sufficient evidence does not support Bailey's convictions, we remand to the trial court to vacate the felony harassment convictions and dismiss the charges with prejudice.[5]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

I concur:

_____
Lee, J.

---

[5] Bailey further asserts that he was denied a fair trial due to jury instructional error and that the trial court miscalculated his offender score. In his statement of additional grounds for review, Bailey contends that the arresting officers lacked probable cause, his due process rights were violated, the fellow officer rule does not apply, and cumulative error. Based on our disposition of this case, we do not reach these additional issues.

CRUSER, C.J. (concurring in part)—I agree with the majority's holding that insufficient evidence supported Jared Bailey's felony harassment convictions, as the fear experienced by the criminal justice participants was not reasonable under the circumstances. I also share the majority's discomfort with the inexplicable admission of exhibit 3, which was both hearsay and, as it relates to the non-testifying R. Tye Grahm, a probable confrontation clause violation. I write separately to state my view that the majority should have engaged in a more in-depth analysis of Bailey's claim that the prosecutors' fear was based, at least in part, on racial bias and, thus, could not properly be considered by the jury in its consideration of whether the prosecutors' fear was reasonable for a criminal justice participant.

The majority is correct that Bailey did not take steps indicating an intention to follow through with his threats, and that the record does not show that Bailey had the present or future ability to carry out the threats. But Bailey identifies evidence suggesting that racial bias, whether conscious or unconscious, formed, at least in part, the basis of the prosecutors' subjective fear of Bailey. In their conversation with Olympia police officers, the prosecutors both addressed their understanding of the sovereign citizen movement generally and, specifically, another prior defendant who adheres to this movement. This individual had previously made threats against presiding judges and had gone so far as to come to the prosecutors' office. However, the prosecutors indicated that they did not fear this individual.

In discussing Bailey, and why they feared him particularly, the prosecutors identified Bailey's membership in the Moorish sovereign citizen movement, and stated that Bailey is a sovereign citizen "with a twist."[6] Based on his mentions of the Civil War and the Ku Klux Klan,

---

[6] Ex. 3 at 4 min., 1 sec.

the prosecutors described Bailey as "fixate[d]" on the fact that he is Black and they are white.[7] The prosecutors also employed terms and expressions that are generally regarded as dog whistles when used to characterize Black men, such as being "loud" and of large physical stature.[8, 9] And as it relates to the Moorish subset of the sovereign citizen movement in particular, the prosecutors did not offer any evidence about this subset of the movement or why this subset is more concerning to them than the main sovereign citizen movement with whose members they have previously interacted.

The majority is correct that we must view the evidence in the light most favorable to the State, but this fact does not preclude us from evaluating the evidence, or lack of evidence, as a whole. Although we are required to draw all *reasonable* inferences in the State's favor, this deferential standard "is not a rubber stamp." *In re Pers. Restraint of Knight*, 2 Wn.3d 345, 354, 538 P.3d 263 (2023) (plurality opinion). In the absence of some evidence that a Moorish sovereign citizen is more likely to act with violence, the prosecutors' reliance on this fact does not properly fit into the calculus of whether their fear was the type of fear that a reasonable criminal justice participant would experience. As Bailey articulates in his brief, "[r]easonable prosecutors, in particular, are expected to be cognizant of the history of racial discrimination in the criminal legal system." Br. of Appellant at 53. Bailey further argues there are several "contextual factors" the prosecutors should have considered in evaluating the words in his email, such as the determination,

---

[7] *Id.* at 9 min., 10 sec. through 9 min., 53 sec. Grahm also mentioned that Bailey had accused the City of Olympia of being "in cahoots" with the Ku Klux Klan. *Id.* at 3 min., 7 sec.

[8] *Id.* at 7 min., 50 sec. through 8 min., 32 sec.

[9] As Bailey notes in his brief, "[a] person may use 'coded "dog whistle" language' to express racial bias, *even without intending to*." Br. of Appellant at 52-53 (emphasis added) (quoting *Henderson v. Thompson*, 200 Wn.2d 417, 432-33, 518 P.3d 1011 (2022)).

in Bailey's misdemeanor case, that he was incompetent to stand trial. *Id.* at 55. Bailey also points to his status as an unrepresented litigant, which provides at least a partial explanation of his use of emphatic legal jargon he plainly did not understand.

Bailey correctly notes that the " 'reasonable criminal justice participant' " standard is an onerous standard. *Id.* at 50-51 (quoting RCW 9A.46.020(2)(b)). This is because the law assumes that criminal justice participants such as prosecutors and law enforcement officers have greater resilience to these types of interactions. Criminal justice participants interact with people when they are experiencing some of the most difficult moments of their lives. Emotions run high in these situations. Interactions that would understandably alarm lay persons are, unfortunately, not uncommon for criminal justice participants to experience. The prosecutors in this case acknowledged this fact in their discussion of the other criminal defendant who identified as a sovereign citizen and had engaged in threatening behavior toward other criminal justice participants but whose behavior did not alarm them.[10] Under this higher standard of reasonableness, the evidence, in my view, was insufficient to support the jury's finding that the fear experienced by the prosecutors in this case was reasonable.

I concur with the majority's conclusion that Bailey's conviction must be reversed and dismissed with prejudice. I respectfully part company with the majority, however, in its inadequate analysis of Bailey's claim that conscious or unconscious bias was, at least in part, the basis of the

---

[10] *See* Ex. 3 at 4 min., 2 sec.; 19 min., 43 sec. through 20 min., 13 sec.

13

subjective fear experienced by the prosecutors. This type of fear cannot properly be considered in the jury's determination of whether the fear experienced by the prosecutors was the type of fear a reasonable criminal justice participant would experience.

_Cruser, C.J._
CRUSER, C.J.